Good morning, Your Honors. May it please the Court. My name is Tim Everett and I am before the Court today to represent Ms. Maria Dolores Ramirez-Landeros. Ms. Ramirez is a Mexican national citizen. She resided in the United States ten years previous to these current proceedings. Her husband is a lawful permanent resident. She has two U.S. citizen children. Her eldest son, Eric, is highly dependent on his parents and highly dependent on medical treatment in the United States. In 2000, Ms. Ramirez was subject to two expeditious removal orders and she was also placed in removal proceedings subject to Section 240 of the Immigration and Nationality Act. I am before the Court today to assert that Ms. Ramirez should not have been expeditiously removed. She should not have been expeditiously removed. The facts are that she was removed twice expeditiously and the third attempted entry she was placed into removal proceedings. And the facts are that she was desperate to be reunited again with her family and her son, who is highly dependent on her. The basis for our claim is a plain reading of the statute at Section 235 of the Immigration and Nationality Act. We think a plain reading of this shows that those individuals who have lived in the United States more than two years who show that should not be subject to expeditious removal. And obviously she had lived in the United States ten years prior to leaving and we think that this reading is supported by, this interpretation is supported by a plain reading of the statute. Our other argument is, if it's not, that it should be read to read such, because in that way it would avoid an equal protection violation between Section 235 and Section 240A. It might help if you would connect what the importance of that is. That final argument, Your Honor, of the ---- Yeah. All right. Suppose she shouldn't have been expeditionally removed. How does that help you? How would that help her? She was barred. Her application for relief was under 240A.B.1 of the Immigration and Nationality Act. That is that she had ten years of presence. She had good moral character and that she would suffer hardship. The problem in court was that with the prior removal orders, they did not think that she had good moral character or the, as the law reads today, that she would not have the ten years of uninterrupted continuous presence. So we think that's directly relevant to her eligibility decision, an eligibility decision on that basis for relief. And for the Court's information, her husband, who is a lawful permanent resident today, received that relief based on the hardship to the two children, principally the eldest child, Eric. So we think that's the crux of the eligibility herein for her claim to relief. So it's two things. One is the ruling there was no good moral character aspect of the ---- Yes, exactly. And that's part of our brief. And it's also an argument because apparently the law had changed and there was a reference to the good moral character bar. We think that reference is, I guess, misplaced because it appears part of the Act changed, but the other part of the Act did not change. What is precisely before us? What is it that we're reviewing? What do I want the Court to make? No, no, no. I want to know what it is we're reviewing. Are we reviewing the BIA's opinion? Well, certainly, I mean, I think the BIA's ---- I mean, you know, if it's a civil case, there's a judgment. That's what we're reviewing. And there may be some things underlying it. My understanding here is that we're reviewing and this is a bit unusual for the kind of cases we're getting these days in this area. This is an actual opinion by a member of the BIA, right? Yes. And his decision turned somewhat on matter for Mollis, saying that since she had been a matter for Mollis, I understand it's used in the BIA decision, but it involves someone, as the Court knows, who took voluntary departure in lieu of possible removal. Our argument is more toward the application of, I don't want to use that word, but Section 235. Let me ask the question I'm attempting to get at. My understanding is that the BIA opinion, it's not a summary affirmance, it's not a streamlined case, is on the ground that the expedited removal order terminated, broke, legally interrupted the continuous presence. Is that correct? Yes. So is that precisely what we're reviewing? Yes. And tell us what's wrong with that opinion. Well, see, if the Court leads me in that direction, then we go into matter for Mollis and the Ninth Circuit opinions which have upheld that on voluntary departure. My argument rests more with the underlying, because this is a woman who has connections to the United States. She had every reason, her residence was here, and she would... Look, if the equities of this case are clear, you would think that this might be a case where the executive branch would exercise some discretion, but they don't have to, and these days they don't. Discretion's not in abundance these days. We're a court of law. We have to apply the law however sympathetic your client's plight might be and however harsh we might find the government's action in this case to be. Well, Your Honor, the quandary... I'm back to my question. The quandary here is... What's wrong with the BIA opinion? I don't think matter for Mollis... Is it inconsistent with our law? I don't think matter for Mollis applies to this situation. And that's one argument. The other argument is I don't think the orders underneath are valid. That's the other argument.  And that's... In other words, the 10 years was not broken up. Is that what you're getting at? That's the argument, that she was eligible. Why don't you just say that? I thought I did. I'm sorry. Yeah. The 10 years was not broken. She was eligible. She had the 10 years of presence because her intention was to remain in the United States. You want to save a little time for... Yes, I did. Thank you. Thank you for your argument, counsel. We'll hear from the government at this time. The president said the other day that human rights don't stop at the Rio Grande. Does the Justice Department disagree with that? No, the Justice Department does not disagree with that. However, in this case, petitioner did attempt to... Could you keep your voice up a little, please? In this case, petitioner did attempt to unlawfully enter by falsely misrepresenting herself at the border on two occasions. And that resulted in expedited removal orders. However, those orders are not properly before the court at this time. As you've noted, it is, in fact, the board's decision that this court is reviewing. With regard to the two expedited removal orders, the law at 242E2 provides that any challenges to those removal orders shall be brought in a district court proceeding, habeas corpus proceeding. In this case, petitioner did not file a habeas corpus proceeding in challenging either of those expedited removal orders. Could we transfer this matter to the district court to consider it as a habeas? In this case, it's not necessary to do that. I didn't ask you if it was necessary or not. I asked you, do we have the authority to transfer this matter to the district court to consider it under habeas? In this case, petitioner is no longer. Do I have a yes or no to that, and then you can explain your position? Yes, within your authority. We have that authority. I take it you feel we shouldn't do that. Exactly. Tell us why. First place, a petitioner is no longer within custody of the service. So therefore, there would be no custody requirement is not filled for the habeas corpus question. And secondly, with regard to challenges to expedited removal proceedings, the law, again at 242E2, provides that there are three specific issues that may be challenged in those habeas corpus proceedings. That is whether the petitioner is an alien, whether the petitioner was ordered removed under the expedited removal statute, and whether the petitioner can show by a preponderance of the evidence that she's been admitted for lawful permanent residence, for refugee status under section 207, or for asylee status. Petitioner is not challenging any of those particular aspects of the expedited removal proceeding. In fact, he's challenging on equal protection grounds, well, on one of the grounds is equal protection. And any challenges with regard to the constitutionality of the expedited removal proceedings under 242E3 must have been brought within the district court of the District of Columbia within 60 days after the implementation of the expedited removal statute. That challenge was brought in the district court of the District of Columbia, and it was upheld as far as the constitutionality of expedited removal in general. Now, with regard to a specific challenge, that is that the petitioner was an alien who had been present within the United States for two years continuously, such that the expedited removal statute should not be applied to her. That particular provision which he cites, first of all, the plain language does state that that only applies to persons that were immediately present within the United States immediately prior to the detection. So that means, and the expedited removal regulations in the supplementary language make clear that that was to apply to aliens who are present in the United States without inspection and then were detected by the service. So that would be, that would not mean aliens at the port of entry. I started you with a question and deprived you of the opportunity to state for the record your name. Okay, my name is Cindy Farrier, and I'm representing the Attorney General. I just wanted to get that on the record, go ahead. So again, I would like to make clear, however, that the expedited removal challenges, again, are properly brought in the district court and are not properly before the court at this time. The real issue before this court is the petitioner's challenge to the board's determination that her two prior expedited removal orders stopped or cut off her accrual of continuous physical presence for cancellation of removal. What should a person in the petitioner's circumstance do faced with the dilemma that she apparently faced, that she's here in the United States, albeit illegally, but establishing her period of continuous residence if she had stayed here and not gone to Guadalajara, I think it was. She probably would have met the 10-year, the seven-year requirement, whichever one applies. But let's assume she's a petitioner in her circumstances in Mexico and doesn't want to violate the law. What should they do? That is, so assuming that she has left the country then. Understanding the law that if it's just brief and temporary and it doesn't interrupt. Well, she would need to have permission from DHS to enter the United States. Usually that would be through some sort of visa. In this case, the petitioner's husband is now a lawful permanent resident. He could have petitioned on her behalf in order to get her a visa petition so that she could basically become a citizen based upon his citizenship. Now, I'm not sure that he actually got his lawful permanent residency prior to her leaving the United States. So that may not have been an option for her at that time. Can she do that now? She can apply. Her husband can file a visa petition application on her behalf. Even with this history? There is a bar. I believe it is a five-year bar on reentry. However, DHS has the discretion to waive that particular bar if the petitioner requests it. Again, that is within DHS's discretion, but it is an option that is available to her. If this requires you to speculate, what chance do you think she would have if he applied? I'm sorry. I really can't speculate. I would imagine, as you've mentioned, she does have quite a long period of time here in the U.S. and her children are here. Now that her husband has the chance to stay there, the equities do seem to ride in her favor. Is there any possibility that this dilemma could be mediated? No. Under the statute as it stands now, the government's position is that she was properly ordered, removed, and properly found and eligible for the leave. I understand that, but you've told me, and correct me if I'm wrong, that tomorrow if the husband applied for a visa and she tried to obtain a waiver, she might be able to come in. It's something that is within the agency's discretion. In the experiences I've had in the past with dealing with the service, it's something that they would consider quite speculative, because there's still a number of steps that have to be taken before a petitioner would in fact be eligible to re-enter the U.S. In this case, I mean the case as it stands, is a proper determination under this court's decision in Vasquez-Lopez, which upholds matter of Romeles. And in matter of Romeles, the board, it's a broad decision, which says not only is it voluntary departure or voluntary return, which would cut off a person's accrual of physical presence, but in fact it's also a person who leaves the United States under an order of removal, which would be this particular petitioner's case. So the board's decision is correct, and the government would not believe that mediation is in fact appropriate in this particular case at this time. If the petitioner were here in the United States, and she had been found by the INS, and the proceeding had been brought as it was here, the same kind of proceeding, would she have had the opportunity to have her prior two removals reviewed, or to have a full hearing to see whether she was a good moral character? No. If I'm understanding, the expedited removal orders would still be out there? Yes. No. Again, the challenge to the expedited removal orders specifically would have had to have been brought in the district court. With regard to whether she gets a full hearing as to her good moral character and all the other aspects of her application for cancellation, what she got was what she would have received even if she had re-entered the U.S. and had gotten back to her family and then somehow been detected by DHS. There has been a change in the leadership of the Justice Department. Yes. And following up with Judge Hawkins' suggestion about mediation, this seems to me to be a preposterous result. I just can't imagine why the agency or the AG would want to have this result where we have a woman trying to get back to be reunited with her blind son found to be of bad moral character for doing so. Now, as I understand it, isn't the fact that she just left for a temporary period, that didn't disqualify her, right? The fact that she left for a temporary period and attempted to illegally re-enter the country. No, just leaving. When she's just leaving, no, that's fine. She's not here legally. If she chooses to leave, that's appropriate. That's fine. The law is that a temporary leaving does not necessarily interrupt the continuous presence period. It's not necessarily correct. The issue is here is that, and the problem and what supports the government's position here, is that on three separate occasions, she came to the border and lied to the immigration officers in the sense that she falsely represented who she was. That is what is the problem here. It's not her good moral character, per se. The immigration judge relied on that, but the board issued its own decision and didn't rely on the good moral character finding. Instead, just relied on the fact that those two orders of removal in which she was informed that she could not re-enter the United States within five years without seeking permission or some other way of entering legally the United States, on those two occasions, those cut off her accrual of continuous physical presence. So that's the board's holding in this case. You know, I can understand the application of the various technicalities of the rules, but in this situation, it seems such a preposterous result that it seems strange that there isn't some exercise of prosecutorial discretion because the finding of bad moral character and so forth to get back to be reunited with your son was blind. And having been there for ten years, all of these things just reach a preposterous result. And I just can't imagine that there isn't some basis on which the real justice of the situation is looked at. Even Congress has passed that Life Act, which is the idea of it is to reunite and keep united families. Here we're doing the exact opposite. And I just can't imagine that something can't be thought of to remedy that. Again, the government's problem or position in this case is that she did attempt to reenter illegally. And that is the problem. What happens to the blind boy now? His father is here with him. He can stay with his father. He can go back with his mother to Mexico. He's not left without parents or choices. He's still a U.S. citizen. He can stay here if they have some means to let him stay here. It is a difficult situation. He just can't have his mother back with him for five years or so. Unless she is able to find a way to come back legally. It is a difficult position. But it wasn't, again, just to make clear, the decision wasn't by the board decided on her good moral character. It was the fact that her orders of removal, two of them, cut off her continuous physical presence. We understand your position. Our questions have taken you over your time. Thank you for your argument. Just before you sit down, who's the senior official at either OIL or EOIR who would make the decision whether to engage in mediation of this case? Would that be Kevin Rooney? He is at EOIR. But I think the client actually here would be the Department of Homeland Security. And so I'm not certain exactly within the department who is the person that would speak to that, whether it would be the legal counsel or whether it would be the actual commissioner of the Homeland Security. Okay, thank you. Counsel? Yes, Your Honor. If I may briefly. First, regarding the issue of habeas, obviously Ms. Ramirez is subject to, except for the court's stay, subject to detention and removal from the United States. My understanding is that... She's not currently detained, is she? No, she's not. But she could be if the court were to lift the mandate. As to whether the... Excuse me, Doctor. Yes, Your Honor. You're saying if we were to lift the mandate? I'm not sure that's the proper terminology, but if you were to lift the stay, she certainly could be removed. If we were to deny relief in the mandate issued and she would be in custody, would she do? Immediately file a habeas petition? We would try out any form of relief that we could. I think that would involve attempting to stay the removal again. And if that involved a habeas, we might. I don't know. I'd have to look at... If she would be... If we could pursue that path, we would. But you're asking me something I don't really have an answer to at the moment. Well, that would have to be a supreme moment of bringing together certain factors in our order which would make it possible to have her picked up. And then you'd have to get your petition filed before she was actually removed. That'd be almost impossible. The problem in this case is she's picked up and detained for some period of time. I don't know how that would affect the child in this case. I guess my argument is that she is subject to immediate detention and removal except for the stay in the court. I don't think that should bar a habeas action. Furthermore, the case cited from the district court the American Immigration Lawyers Association versus Reno that case turned on standing and also on the fact that the individuals as named plaintiffs or the individuals who were being represented by the named plaintiffs did not have any ties to the United States were not lawful permanent residents. We don't think that's the case here. Finally, and I don't need to reach that to the court because I'm sure the court's aware of them but it just appears that 235 does not describe Ms. Ramirez and if the position of all is taken then this court will have no nor will any court have review over that determination. And I think that's very extreme. I mean we're saying basically the Attorney General can make a mistake and no one can review that. And I don't think Congress had that intention. In fact, the way this section is read together with the 240A, the cancellation section What is it you're asking us to do? Your Honor, I'm asking to find that this woman's eligible for cancellation removal and that she does have good moral character And why is she eligible? Because the remove orders were not valid and validly entered. The statute was not interpreted correctly. It's plain reading shows that it was not interpreted correctly and that she does have good moral character. Okay, thank you. The case just argued will be submitted for decision. Thank both counsel for their arguments and we'll proceed to the next case on the calendar which is the United States v. Callahan. If counsel are present, if they'd come forward, please. Mr. Lackland?
judges: Hug, Thompson, Hawkins